UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------X

MARIO GOMEZ,                                          07 Civ. 9310 (FPS)

        Plaintiff,                       **MEMORANDUM DECISION AND ORDER**
                                          **CONVERTING MOTION TO DISMISS**
v.                                               **INTO MOTION FOR SUMMARY JUDGMENT**
                                        **AND GRANTING IN PART AND DENYING**
VILLAGE OF SLEEPY HOLLOW,                         **IN PART DEFENDANTS' MOTION FOR**
DETECTIVE JOSE QUINOY in his                      **FOR SUMMARY JUDGMENT**
individual and official capacity,
POLICE OFFICER ELDRYK EBEL in his
individual and official capacity,
POLICE OFFICER MIKE GASKER in his
individual and official capacity,
POLICE OFFICER RICHARD D'ALLESANDRO in
his individual and official capacity,
LIEUTENANT BARRY CAMPBELL in his
individual and official capacity,
LIEUTENANT GABRIEL HAYES in his
individual and official capacity,
SERGEANT WOOD in his individual
and official capacity,
CHIEF OF POLICE JIMMY WARREN in his
individual and official capacity,
and POLICE OFFICERS JOHN DOES 1-4,

        Defendants.

-------------------------------------------X

I. <u>Procedural History</u>

The plaintiff's complaint arises out of his October 17, 2006 arrest by the Sleepy Hollow Police Department for aggravated harassment, resisting arrest, assault, and obstruction of governmental administration. The complaint alleges violations of the plaintiff's constitutional rights, including claims of excessive force, false arrest, false imprisonment, and malicious prosecution. Additionally, the plaintiff alleges claims against the Village of Sleepy Hollow ("Village") pursuant to <u>Monell v. New</u>

York City Dept. of Soc. Servs., 436 U.S. 658 (1978).  These claims include failure to train, conspiracy claims under 42 U.S.C. §§ 1983 and 1985, and state law claims sounding in assault and negligence.[1]

On April 17, 2008, the individual defendants, Officer Jose Quinoy ("Officer Quinoy"), Officer Eldryk Ebel ("Officer Ebel"), Officer Mike Gasker ("Officer Gasker"), Officer Richard D'Allesandro ("Officer D'Allesandro"), Lieutenant Barry Campbell ("Lieutenant Campbell"), Lieutenant Gabriel Hayes ("Lieutenant Hayes"), Sergeant Hood,[2] and Chief of Police Jimmy Warren ("Chief Warren") filed a motion to dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  The individual defendants seek to dismiss this action against them on the ground of qualified immunity.  In addition to the notice of motion (Doc. 11), the individual defendants filed a declaration of Jennifer E. Sherven in support of the motion to dismiss (Doc. 12), as well as a memorandum of law (Doc. 13).

In response, on June 27, 2008, the plaintiff filed a declaration of Francis X. Young in opposition to the motion to

_____

[1]The plaintiff's wife, Awilda Gomez, commenced a separate action against the Village of Sleepy Hollow and several of its police officers, asserting similar claims as her husband.  The individual defendants in Awilda Gomez's case have also moved to dismiss on qualified immunity grounds.  On May 19, 2009, Judge Stephen C. Robinson issued an order consolidating these cases. Although this Court issues two separate opinions addressing the motions to dismiss, it is aware that the cases are consolidated for discovery purposes.

[2]Sergeant Hood is incorrectly named in the caption as Sergeant Wood.

dismiss (Doc. 16).[3]  On August 18, 2008, the individual defendants filed a reply memorandum of law in further support of their motion to dismiss the action based on the doctrine of qualified immunity. This pending motion is now ripe for review.  This Court notes that because the plaintiff's submissions of May 26, 2011 and May 27, 2011 did not comply with this Court's order of May 18, 2011, this Court does not consider them for the purpose of deciding the motion to dismiss.  Instead, this Court considers the plaintiff's memorandum of law in response to the motion to dismiss submitted by the defendants on May 27, 2011, as it is the original version that should have been filed along with the declaration of Francis X. Young in opposition to the motion to dismiss (Doc. 16) on June 27, 2008.  For the reasons set forth below, this Court finds that the individual defendants' motion to dismiss, which is converted into a motion for summary judgment, must be granted in part and denied in part.

---

[3]As this Court noted in its order dated May 18, 2011 (Doc. 44), the memorandum of law in response to the motion to dismiss was not filed on June 27, 2008.  Instead, the filing (Doc. 16) is merely a compilation of attachments.  For this reason, the Court directed the plaintiff to re-file the memorandum of law in response to the motion to dismiss as previously submitted to counsel for the defendants.  On May 25, 2011 and May 26, 2011, the plaintiff re-filed his response to the motion to dismiss and its accompanying attachments.  Unfortunately, the memorandum of law had been edited, contrary to this Court's order.  On May 27, 2011, counsel for the defendants filed a declaration of Kelly C. Spina, which confirmed that the documents submitted by the plaintiff differed from those originally filed in July 2008.  The defendants attached a true and accurate copy of the plaintiff's memorandum of law dated June 27, 2008 that was served upon their office.

II.   <u>Facts</u>[4]

On October 17, 2006, Mario Gomez, a retired New York City Corrections Officer, received a telephone call from Officer Quinoy. During this phone conversation, Gomez and Officer Quinoy discussed Officer Quinoy's relationship with Gomez's daughter, Haydee.  Gomez expressed his disapproval of the relationship, and in response Officer Quinoy challenged Gomez to come down and meet him in front of the Sleepy Hollow Police Station.

After Gomez's wife, Awilda, arrived at their home, the couple drove separately to the Sleepy Hollow Police Station to meet Officer Quinoy.  Upon arriving at the station, Gomez saw Officer Quinoy and Officer Gasker standing next to each other on the sidewalk in front of the station.  Gomez parked his car and while he stood beside his vehicle, Officer Quinoy ran towards him instructing him not to move.  Gomez turned around, then placed his hands on his vehicle, at which time Officer Quinoy pushed him against the car.  When Gomez informed Officer Quinoy that he just wanted to talk, Officer Quinoy hit him on the left side of his head.  Gomez began to defend himself against the assault, and the two men struggled until Gomez was on the ground.  While Officer Quinoy was trying to pull Gomez to the ground, he yelled "tase him," and Gomez was shocked with a taser gun in the back of the

_____

[4]For purposes of deciding this motion to dismiss, which is converted into a motion for summary judgment, this Court adopts, for the most part, the facts as set forth in the complaint and the plaintiff's response to the motion for summary judgment.

neck, causing both he and Officer Quinoy to fall to the ground.  As Gomez lay on the ground, Officer Quinoy continued his attack and it is asserted by the plaintiff that Officer Ebel began kicking Gomez in his ribs.

Seeing the altercation outside, Awilda ran into the police station seeking assistance.  She spoke to Lieutenant Hayes and explained that her husband was currently being assaulted outside.  Lieutenant Hayes ignored her requests for help.

Gomez pleaded with the officers to stop beating him and told them that he was willing to be handcuffed.  Officer Ebel then handcuffed Gomez while Officer Quinoy repeatedly kicked him in the head.  Gomez contends that he was tasered multiple times after being placed in handcuffs.  On multiple occasions, Gomez informed the officers that he was a retired New York City Corrections Officer and that this was a family matter, but the officers continued their attack.

After her unsuccessful attempt to seek help in the police station, Awilda returned to the scene of the assault and begged Officer Quinoy to stop attacking her husband.  Officer Quinoy then grabbed Awilda and threw her against her car.  Again, Awilda sought help inside the police station, but her requests were met with silence from Lieutenant Hayes.

Awilda went back outside and again began pleading with Officer Quinoy to stop the attack.  Officer Quinoy responded by picking her up and slamming her into the car.  Gomez asked the officers to

spare his wife as she had recently had surgery, but this only prompted the officers to resume kicking and tasering Gomez in the head and back.

Shortly thereafter, several members of the Tarrytown Police Department and additional members of the Sleepy Hollow Police Department arrived and ordered Officer Quinoy to stop his assault. Gomez was then lifted off the ground and placed into a police car by Officer D'Allesandro and Officer Michael Hayes ("Officer Hayes"). As Gomez sat in the car handcuffed, Officer D'Allesandro kicked him on the right side of his face at the instruction of Officer Quinoy.

Gomez was then taken into the police station where paramedics treated him for his injuries. One of the paramedics indicated that she wanted to transport Gomez to the hospital, but she was refused by members of the Sleepy Hollow Police Department. After Gomez's legs started trembling and he began to experience heart palpitations, the paramedics transported him to the hospital.

As a result of this assault, the plaintiff sustained serious and permanent injuries. Thereafter, the defendants allegedly caused false criminal charges to be filed against the plaintiff. In addition to the claims against the officers in their individual and official capacities, the plaintiff claims that the Village has permitted and tolerated a pattern of unjustified, unreasonable, and illegal use of force against civilians by police officers. Further, the plaintiff contends that the Village has failed to

6

maintain a proper system for investigation of all incidents of excessive use of force by police officers.  According to the plaintiff, by permitting and assisting such a pattern of police misconduct, the Village has acted under color of custom and policy to condone the deprivation of the plaintiff's constitutional rights.

III.  <u>Applicable Law</u>

A.   <u>Motion to Dismiss and Motion for Summary Judgment</u>

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010).  A motion to dismiss under Rule 12(b)(6) or 12(c) must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 where "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d).  The parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion." <u>Id.</u> The conversion is "governed by principles of substance rather than form.  The essential inquiry is whether the [opposing party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." <u>In re G. & A. Books, Inc.</u>, 770 F.2d 288, 295 (2d Cir. 1985).  Importantly, "[a] party cannot complain of lack of a

7

reasonable opportunity to present all material relevant to a motion
for summary judgment when both parties have filed exhibits,
affidavits, counter-affidavits, depositions, etc. in support of and
in opposition to a motion to dismiss." Id.  In this case, because
the parties have attached affidavits and transcripts of depositions
to the motion, Rule 12(d) requires that it be treated as a motion
for summary judgment.[5]

> Under Rule 56(c) of the Federal Rules of Civil Procedure,
>
> A party asserting that a fact cannot be or is genuinely
> disputed must support the assertion by:
>     (A) citing to particular parts of materials in the
> record, including depositions, documents, electronically
> stored   information,   affidavits   or   declarations,
> stipulations . . . admissions, interrogatory answers, or
> other materials; or
>     (B)  showing  that  the  materials  cited  do  not
> establish the absence or presence of a genuine dispute,
> or that an adverse party cannot produce admissible
> evidence to support the fact.

Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears
the initial burden of showing the absence of any genuine issues of
material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23
(1986).  "The non-movant may defeat summary judgment only by
producing specific facts showing that there is a genuine issue of
material fact for trial." Samuels v. Mockry, 77 F.3d 34, 36 (2d.
Cir. 1996) (citing Celotex, 477 U.S. at 322).

However, as the United States Supreme Court noted in Anderson
v. Liberty Lobby, Inc., 477 U.S. 242 (1986), "Rule 56(e) itself

_____

[5]Judge Robinson came to this conclusion in his memorandum
decision and order consolidating the cases.

provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250.

In <u>Celotex</u>, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had adequate time for discovery. <u>Salahuddin v. Coughlin</u>, 993 F.2d 306, 308 (2d Cir. 1993). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

B.   <u>Qualified Immunity</u>

Under federal law, the doctrine of qualified immunity shields officials from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they

are alleged to have violated. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is an immunity from suit rather than a mere defense to liability; therefore, it protects officials from the burdens of litigation for the choices that they make in the course of their duties. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Notably, the defense of qualified immunity is available only to an official sued in his individual or personal capacity, and not to an official sued in his official capacity. Kentucky v. Graham, 473 U.S. 159, 165-68 (1985).[6]

    "A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If no constitutional right was violated, the inquiry ends. But if a violation could be established on a favorable view of the parties' submissions, the next step is to ask whether the right was clearly established. Id. The Second Circuit has further refined the second inquiry under Saucier: A government actor performing a discretionary task will be entitled to qualified immunity if either

---

    [6]Kentucky v. Graham also states that a claim against a state or municipal official in his official capacity is treated as a claim against the entity itself. Graham, 473 U.S. at 166. Because the plaintiff in this case has asserted claims against The Village of Sleepy Hollow, the municipal entity, the claims against the officers in their official capacities are duplicative and can be dismissed. See Baines v. Masiello, 288 F. Supp. 2d 376, 384 (W.D. N.Y. 2003).

"(a) [his] action did not violate clearly established law, or (b) it was objectively reasonable for [him] to believe that his action did not violate such law." Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001).   In 2009, the Supreme Court revisited the Saucier two-step analysis and held that a federal court no longer has to adhere to the rigid order of analysis but may instead adopt an "order of decisionmaking that will best facilitate the fair and efficient disposition of each case." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 812 (2009).

### IV.   Discussion[7]

A.   Sergeant Hood

In their motion for summary judgment, the individual defendants argue that Sergeant Hood is entitled to qualified immunity because he was not present during the plaintiff's arrest. In response to the motion for summary judgment, the plaintiff states that he "does not oppose that part of defendants' application that addresses the conduct of Sergeant [H]ood." (Pl.'s Mem. of Law in Resp. 2.)  Thus, this Court finds that Sergeant Hood is entitled to summary judgment.

---

[7]This Court notes that the claims set forth in the plaintiff's complaint are broadly stated -- all of the individual defendants are included in all of the causes of action.   In briefing the motion for summary judgment, the parties discuss more specifically which claims apply to each individual defendant.   This Court addresses all claims deemed to be applicable to each defendant given his involvement, or lack thereof, in the assault.

B.   <u>Chief Warren, Lieutenant Hayes, and Lieutenant Campbell</u>

In their motion for summary judgment, the individual defendants argue that Chief Warren, Lieutenant Hayes, and Lieutenant Campbell are entitled to qualified immunity because they were not present during the plaintiff's arrest.  According to the defendants, even if a jury were to conclude that the police officers' collective use of force was objectively unreasonable, the plaintiff still has to prove that the individual defendants were "personally involved in order to recover damages against [them] for the use of excessive force." <u>Thompson v. Tracy</u>, No. 00 Civ. 8360, 2008 WL 190449, at *6 (S.D. N.Y. Jan. 17, 2008).  Further, there is no evidence that Chief Warren, Lieutenant Hayes, and Lieutenant Campbell actually observed the alleged use of excessive force.  The defendants also highlight the fact that the plaintiff has admitted that Chief Warren, Lieutenant Hayes, and Lieutenant Campbell were not present during his arrest.

In response, the plaintiff contends that Chief Warren is not entitled to qualified immunity because he is a supervisor liable for damages resulting from the acts of his subordinates. Specifically, the plaintiff argues that although Chief Warren was not directly involved in his beating and arrest, he is not shielded by qualified immunity because of his knowledge of the risk posed by Officer Quinoy to the general public and his failure to take any preventative action.  The plaintiff asserts that Chief Warren knew that Officer Quinoy was emotionally and mentally unstable and prone

12

to violence, yet negligently failed to supervise his unstable subordinate.  The plaintiff cites various instances in which Chief Warren was allegedly aware of inappropriate conduct by Officer Quinoy, yet failed to discipline him.  (M. Gomez Dep. 160-64.)

With regard to Lieutenant Campbell, the plaintiff argues that he is not entitled to qualified immunity because he failed to investigate a witness's statement regarding the assault and because he attempted to conceal evidence in violation of Gomez's constitutional rights.  According to the plaintiff, officers who engage in a cover-up of police abuse should be held accountable. The plaintiff contends that Lieutenant Hayes must be held liable for his failure to intercede on the plaintiff's behalf.  Lieutenant Hayes, according to the plaintiff, was fully aware of the assault taking place outside of the police station, but he intentionally took no action to stop it.  Thus, the plaintiff argues Lieutenant Hayes cannot be shielded by qualified immunity.  This Court addresses the arguments presented against these three officers in turn.

    1.  <u>Chief Warren</u>

"The qualified immunity analysis depends upon an individualized determination of the misconduct alleged." <u>Poe v. Leonard</u>, 282 F.3d 123, 134 (2d Cir. 2002).  A supervising police officer, such as Chief Warren, cannot be held liable under § 1983 for negligent supervision of his employees absent evidence that any employee acted outside the scope of his or her employment or that

the supervisor knew or should have known of any employee's misconduct. Newton v. City of New York, 681 F. Supp. 2d 473, 494 (S.D. N.Y. 2010). The plaintiff must establish the defendant's deliberate indifference by showing that "'the need for more or better supervision to protect against constitutional violations was obvious,' but that the defendant made 'no meaningful attempt' to forestall or prevent the unconstitutional conduct." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 127 (2d Cir. 2004) (quoting Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995)). Further, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991)).

In this case, the plaintiff has failed to demonstrate such personal involvement by a supervisory defendant such as Chief Warren because he has not shown: (1) that Chief Warren personally participated in the alleged constitutional violation; (2) that he was grossly negligent in supervising subordinates who committed the wrongful acts; or (3) that he exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Because the plaintiff acknowledges that Chief Warren was neither present nor directly involved in Gomez's arrest and beating, this analysis focuses on

14

whether Chief Warren displayed gross negligence or deliberate indifference in his supervision of the officers.  The plaintiff argues that Chief Warren's knowledge of Officer Quinoy's mental instability and previous use of excessive force amounts to deliberate indifference, but this Court does not agree.

A supervisor may be liable for failing to screen or otherwise inquire about his subordinates and their actions.  See Fiacco v. City of Rensselaer, 783 F.2d 319, 329-31 (2d Cir. 1986) (finding sufficient evidence to support a jury's finding that a police chief was deliberately indifferent to his officers' use of excessive force because the evidence showed that the chief failed to exercise reasonable care in investigating several claims of police brutality).  In this case, the appropriate inquiry is as follows: is there a genuine issue of material fact as to whether Chief Warren knew or should have known that there was a high degree of risk that Officer Quinoy would use excessive force, but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to Gomez?  This Court finds that the plaintiff has failed to set forth specific facts showing that there is a genuine issue for trial with regard to Chief Warren's liability.

In support of his claims against Chief Warren, the plaintiff references multiple incidents involving misconduct on the part of Officer Quinoy and argues that Chief Warren was aware of Officer

Quinoy's instability and violent nature because of these previous incidents. The plaintiff, however, presents no evidence of Chief Warren's knowledge of these incidents other than his own deposition testimony. During his deposition, the plaintiff discusses an incident where Officer Quinoy sexually harassed a woman by the name of Ms. Barreo. The plaintiff claims that Chief Warren "never did anything about it." (M. Gomez Dep. 160.) The plaintiff references the incident in general, but provides no detail as to what exactly happened and what Chief Warren knew about the alleged sexual harassment. Similarly, the plaintiff's knowledge of the incident involving Joe Cotarelo is limited to what Mr. Cotarelo told him -- the plaintiff has offered no proof that the incident actually occurred. (M. Gomez Dep. 157-58.) The plaintiff's statements regarding other incidents of false arrests and assaults involving Officer Quinoy also suffer from a lack of evidence. In fact, the plaintiff was unable to remember many of the names of the victims who allegedly suffered from run-ins with Officer Quinoy. (M. Gomez Dep. 165-67; 200-02.)

Construing all facts and drawing all reasonable inferences in Gomez's favor, this Court concludes that he has failed to proffer sufficient evidence to raise a triable issue regarding Chief Warren's alleged gross negligence or deliberate indifference. The scattered facts presented in Gomez's deposition testimony are insufficient to show that Chief Warren was aware of a high risk that Officer Quinoy would violate another's constitutional rights.

16

Accordingly, Gomez fails to establish that Chief Warren acted with the sort of gross negligence or deliberate indifference necessary to support supervisory liability under clearly established law.

Even if this Court found that the plaintiff demonstrated that Chief Warren's inactions violated clearly established law, that would not change the conclusion that he is entitled to qualified immunity because his conduct was not objectively unreasonable. See Cerrone v. Brown, 246 F.3d 194, 202 (2d Cir. 2001) ("A defendant is therefore entitled to summary judgment on qualified immunity grounds if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that officers of reasonable competence could disagree on the legality of the defendant's actions." (internal quotations omitted)).

Reasonable supervisors confronted with the circumstances faced by Chief Warren could disagree as to the legality of his inaction. Assuming that the incidents discussed by the plaintiff during his deposition actually occurred and that Chief Warren had knowledge of these incidents, reasonable supervisors could disagree as to whether Chief Warren violated established law by not taking disciplinary action against Officer Quinoy. The incidents described by the plaintiff allegedly involved sexual harassment and destruction of private property by Officer Quinoy, as well as an assault by Officer Quinoy's wife. But these bare-bones allegations do not enable this Court to conclude that Chief Warren acted

17

unreasonably in supervising Officer Quinoy. Therefore, Chief Warren is entitled to qualified immunity.

2. Lieutenant Hayes

The plaintiff next argues that Lieutenant Hayes, although not present at the scene of the assault, is liable for his failure to intercede because he was fully aware of the fact that the plaintiff was being beaten by the other officers yet he took no action to stop it.

A police officer "has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers." O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988). Failure to intercede to prevent an unlawful arrest can be grounds for § 1983 liability. Id. However, "[a] police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997) (quoting Harlow, 457 U.S. at 818). Further, the failure to intercede must be under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights. Anderson v. Creighton, 483 U.S. 635, 641 (1987). To obtain summary judgment on qualified immunity grounds in connection with a claim of failure to intercede, a defendant must show that the only result a fair jury could reach is that reasonably

18

competent police officers, faced with the information available to the non-intervening officer at the time of the arrest, could disagree about the legality of the arrest.  Ricciuti, 124 F.3d at 129 (citing Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995)).

In this case, reasonable officers in Lieutenant Hayes' position could disagree about the legality of the actions of the other officers.  Lieutenant Hayes was not present outside the police station when Gomez was being assaulted.  The only information that Lieutenant Hayes had regarding the assault came from Awilda Gomez, who ran into the police station on multiple occasions seeking help.  There is no evidence that Lieutenant Hayes was aware of the events leading up to Gomez's arrest or the specifics of what was happening outside the police station on October 17, 2006.  In fact, the plaintiff admits that he is unsure if Lieutenant Hayes did anything wrong.  (M. Gomez Dep. 142.) Given the fact that Lieutenant Hayes' had no first-hand knowledge of the incident, and his only connection to the assault was his presence inside the nearby station, this Court concludes that it was not objectively unreasonable for Lieutenant Hayes to refuse to intercede.  Lieutenant Hayes had no way of knowing whether his fellow officers were violating Gomez's constitutional rights, so he is entitled to qualified immunity.

3.   Lieutenant Campbell

The plaintiff contends that Lieutenant Campbell, the officer assigned to investigate the assault of Gomez, failed to investigate

a witness's statement regarding injuries inflicted upon Gomez by Officer Quinoy and attempted to conceal evidence from Gomez.  The defendants argue, however, that the plaintiff has no actionable claim against Lieutenant Campbell because he was neither present during the plaintiff's arrest nor personally involved in the subsequent prosecution.  In their reply, the defendants point to Gomez's deposition, in which he testified that Lieutenant Campbell did not do anything wrong.  The defendants also highlight the fact that the information Lieutenant Campbell allegedly failed to investigate came from an unnamed eyewitness whose affidavit was never submitted.

Viewed in the light most favorable to the plaintiff, the facts alleged do not show that Lieutenant Campbell's conduct violated a constitutional right.  See Saucier, 533 U.S. at 200-01.  The plaintiff claims that Lieutenant Campbell failed to investigate a witness's statement and attempted to conceal evidence that corroborated Gomez's account of the assault, yet the plaintiff offers no evidence in support of these contentions.  Instead, the plaintiff merely points to his own deposition testimony in which he states that a witness came forward and told Lieutenant Campbell about the assault.  During his deposition, the plaintiff also stated that this witness's name did not appear in the police records.  But the alleged redaction of a witness's name hardly supports the contention that Lieutenant Campbell concealed evidence.  In fact, the plaintiff indicates that Lieutenant

Campbell called his house on multiple occasions attempting to get a statement, but the plaintiff never responded to those calls. (M. Gomez Dep. 141.) The record reveals no evidence to support the plaintiff's contention that Lieutenant Campbell engaged in a police cover-up. Significantly, the plaintiff acknowledges that Lieutenant Campbell "didn't do anything wrong." (M. Gomez Dep. 137.) Lieutenant Campbell's knowledge of the relationship between the plaintiff's daughter and Officer Quinoy simply does not support a claim for failure to investigate. (M. Gomez Dep. 139-40.) This Court finds that Lieutenant Campbell is entitled to qualified immunity.

C.    Officer Gasker and Officer D'Allesandro

The plaintiff next argues that Officer Gasker and Officer D'Allesandro used excessive force to arrest him. In the alternative, the plaintiff claims that even if Officers Gasker and D'Allesandro did nothing more than witness the arrest, they are still not entitled to qualified immunity because they failed to intervene to stop the beating. The defendants, however, argue that the plaintiff has failed to show that "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice." Lennon, 66 F.3d at 426. Further, the defendants contend that the plaintiff has not demonstrated that Officer Gasker and Officer D'Allesandro were tacit collaborators in any injury to the plaintiff.

As described above, a police officer does have a duty to intercede on behalf of a citizen whose constitutional rights are being violated by other officers. Ricciuti, 124 F.3d at 129. But "the failure to intercede must be under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights." Id. (citing Creighton, 483 U.S. at 641). This Court finds that reasonably competent police officers, faced with the information available to Officer Gasker and Officer D'Allesandro at the time of the plaintiff's arrest, could disagree about the legality of the arrest. See Lennon, 66 F.3d at 420-21.

The plaintiff admits that after Officer Quinoy instructed him not to move, he turned around. (M. Gomez Dep. 36.) In an attempt to defend himself, Gomez also punched Officer Quinoy two or three times in the forehead or the eye. (M. Gomez Dep. 55.) The plaintiff further admits to grabbing Officer Quinoy as they struggled and fell to the ground. (M. Gomez Dep. 60.) By the plaintiff's own testimony, it is clear that he was not simply a passive victim of an assault -- he refused to follow instructions and fought back against Officer Quinoy. Given Gomez's violent actions toward Officer Quinoy, whether in self-defense or not, it is not unreasonable that Officers Gasker and D'Allesandro chose not to intervene in the arrest. Importantly, the plaintiff has presented very little evidence detailing the participation of Officers Gasker and D'Allesandro. The evidence that this Court

22

does have comes from the plaintiff's own deposition testimony, in which the plaintiff often offers only speculation as to the involvement of these two officers.  For example, the plaintiff does not know which officer used a taser (M. Gomez Dep. 83; 107), he cannot identify which officer kicked him in the ribs or in the back (M. Gomez Dep. 66-69; 104), he is not aware of where the officers were positioned during the assault (M. Gomez Dep. 75), and he is unsure who took him to the police vehicle (M. Gomez Dep. 112). Further, the plaintiff admits that Officer Gasker never kicked him and that Officer D'Allesandro did not do anything wrong.  (M. Gomez Dep. 105; 135-36.)

The plaintiff's false arrest claim fails for similar reasons. Officers enjoy qualified immunity on a false arrest claim if "it was objectively reasonable for [them] to believe that probable cause existed" or if "officers of reasonable competence could disagree on whether the probable cause test was met." Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).  The plaintiff's own testimony, as detailed above, describes a scenario in which reasonable officers could determine that there was probable cause to arrest Gomez.  Thus, because Officers Gasker and D'Allesandro did not physically aid in the plaintiff's arrest and because they had no affirmative duty to stop an arrest based on probable cause, they are entitled to qualified immunity.

D.   Officer Ebel

     As compared to Officers Gasker and D'Allesandro, Officer Ebel
played a more direct role in the plaintiff's arrest.  The plaintiff
alleges that Officer Ebel handcuffed, kicked, and tasered him.[8]
The defendants, however, contend that Officer Ebel's use of force
was not excessive, but was necessary given the threat posed by the
plaintiff.

     The Fourth Amendment prohibits the use of excessive force by
a police officer in the course of effecting an arrest.  See Graham
v. Connor, 490 U.S. 386, 395 (1989).  Because the Fourth Amendment
test for excessive force is a test of reasonableness, "the inquiry
is necessarily case and fact specific and requires balancing the
nature and quality of the intrusion on the plaintiff's Fourth
Amendment interests against the countervailing governmental
interests at stake."  Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir.
2010) (citing Town of W. Hartford, 361 F.3d at 123).  In conducting
that balancing, the Court must consider at least three factors:
"(1) the nature and severity of the crime leading to the arrest;
(2) whether the suspect poses an immediate threat to the safety of
the officer or others; and (3) whether the suspect was actively
resisting arrest or attempting to evade arrest by flight."  Id. at

_____

     [8]In his response to the motion for summary judgment, the
plaintiff also alleges that he was "choked and tasered several
times by Officer Ebel."  (Resp. to Mot. for Summ. J. 5.)  However,
these allegations do not comport with the evidence presented in the
plaintiff's deposition testimony.  The same can be said of some of
the contentions concerning the other officers.

96 (citing <u>Graham</u>, 490 U.S. at 396).  The Court must evaluate the record "from the perspective of a reasonable officer on the scene" and must make "allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." <u>Graham</u>, 490 U.S. at 387; 396-97.

After considering the above factors from the perspective of a reasonable officer on the scene, this Court finds that Officer Ebel's use of force was not excessive.  Given the fact that Gomez did not obey Officer Quinoy's order not to move and the fact that Gomez attempted to punch Officer Quinoy, a reasonable officer could determine that Gomez posed a threat to officer safety.  Gomez also admits to grabbing and wrestling with Officer Quinoy, which a reasonable officer could view as resisting arrest.  Based upon these facts, Officer Ebel's use of the taser gun was reasonable as it was a proportional response to the uncertainty and volatility of the situation.  See <u>Draper v. Reynolds</u>, 369 F.3d 1270, 1278 (11th Cir. 2004).  Additionally, like Officers Gasker and D'Allesandro, it was objectively reasonable for Officer Ebel to believe that there was probable cause to arrest Gomez.

Again, the plaintiff's deposition testimony is littered with uncertainty regarding Officer Ebel's actions.  The plaintiff alleges that he was tasered after he was handcuffed, but he cannot say for certain which officer used the taser.  (M. Gomez Dep. 83.)

25

Gomez only speculates that Officer Ebel put his knee on the plaintiff's neck. (M. Gomez Dep. 106.) Additionally, the plaintiff assumes that Officer Ebel kicked him because he did not see Officer Gasker kicking him. (M. Gomez Dep. 68-69.) This Court simply does not find that the evidence supports the contention that Officer Ebel used excessive force. Based on this Court's determination that a reasonable officer could conclude that Officer Ebel's conduct did not violate Gomez's Fourth Amendment rights, this Court determines that Officer Ebel is entitled to qualified immunity.

E.   Officer Quinoy

Lastly, this Court considers the plaintiff's claims against Officer Quinoy. Gomez alleges that Officer Quinoy acted aggressively from the very beginning of their altercation. Assuming the plaintiff's allegations to be true, Officer Quinoy pushed him against his car, hit him on the left side of his head, and repeatedly kicked him in the head. (Resp. to Mot. to Dismiss at 4.) The plaintiff further alleges that Officer Quinoy kicked him in the head after he was arrested (M. Gomez Dep. 76-77) and kicked him in the face when he was seated in the police car. (M. Gomez Dep. 116-17.) The claims presented by the plaintiff against Officer Quinoy include false arrest, malicious prosecution, and excessive force. The defendants, however, counter that Officer Quinoy had probable cause to arrest Gomez and that his use of force was reasonable in proportion to the volatile situation.

As explained above, the Fourth Amendment test of reasonableness is fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing government interests at stake. Town of W. Hartford, 623 F.3d at 96. In conducting this balancing test, the Court must consider the nature of the crime leading to the arrest, whether the suspect poses a threat to the safety of the officers, and whether the suspect was actively resisting arrest. Graham, 490 U.S. at 396. To succeed on the false arrest claim, Gomez must show that reasonable officers could not disagree as to whether probable cause for his arrest existed. The relevant inquiry for the excessive force claim is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. As the Supreme Court has stated, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Unlike the other individual defendants, Officer Quinoy played a key role in the assault leading up to the plaintiff's arrest and in the arrest itself. Given the fact that the plaintiff disobeyed Officer Quinoy's order not to move and admittedly punched and wrestled with Officer Quinoy, a reasonable officer might find probable cause for his arrest. But even if Officer Quinoy arrested Gomez based on probable cause, this Court finds that he is not entitled to qualified immunity on the excessive force claim. It is

well established "that use of force is contrary to the Fourth Amendment it if is excessive under objective standards of reasonableness." Id. at 201-02.   This Court finds that any reasonable officer placed in Officer Quinoy's shoes would have recognized that Officer Quinoy's actions were unlawful.

In evaluating the particular circumstances of this case, this Court considers the factors set forth in Graham.   Although Officer Quinoy's initial use of force may have been justified by the plaintiff's disobedience and his attempts to fight back, Officer Quinoy's continued assault on the plaintiff, even after he was placed in handcuffs, was unjustified and unreasonable.   After Gomez had been secured on the ground, any threat to officer safety had been significantly diminished.   While lying on the ground, Gomez willingly agreed to be handcuffed, yet Officer Quinoy continued to kick Gomez even after his hands were secured behind his back. (M. Gomez Dep. 76-77; 88-89.)   Moreover, even after Gomez was seated in the police car, Officer Quinoy kicked him in the right side of the face and knocked him to the other side of the car. (M. Gomez Dep. 116-18.)   The facts, as presented by the plaintiff, reveal that Officer Quinoy continued to abuse Gomez after any threat to officer safety or possibility to evade arrest had subsided.   In his deposition testimony, the plaintiff often expresses uncertainty as to the specific actions of the other officers during his arrest, but his description of Officer Quinoy's actions is much less speculative.   Under objective standards of reasonableness, this

Court finds that Officer Quinoy's use of force was excessive and that he violated clearly established law.  Thus, Officer Quinoy is not entitled to qualified immunity.

F.   Malicious Prosecution and False Imprisonment

In his complaint, the plaintiff also states claims for malicious prosecution and false imprisonment.  These claims, however, are not addressed in the plaintiff's response to the motion for summary judgment.  Although the plaintiff seems to have abandoned these claims, this Court addresses them nonetheless.

The Second Circuit has held: "'To state a claim . . . for malicious prosecution, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice.'"  Droz v. McCadden, 580 F.3d 106, 109 (2d Cir. 2009) (quoting Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003)).

In this case, the plaintiff has failed to set forth any details in support of the malicious prosecution claim.  The complaint states that the plaintiff was "maliciously prosecuted in violation of his civil rights," but it does not state what charges were brought against him or whether there was a criminal proceeding against him.[9]  (Compl. ¶ 49.)  Further, the plaintiff does not

---

[9]The defendants' memorandum in support of summary judgment states that the plaintiff's underlying criminal case has not yet been resolved and is currently pending trial, but provides no

argue whether there was probable cause for the proceeding, or that it was initiated with malice.  The malicious prosecution claim is not discussed at all in the plaintiff's response to the motion for summary judgment.  Given the lack of evidence, this Court finds that there is no genuine issue of material fact with regard to the claim for malicious prosecution.  Thus, summary judgment must be granted to the individual defendants on this claim.

The plaintiff's third cause of action is false imprisonment. This Court first notes that the terms false arrest and false imprisonment are virtually synonymous.  <u>See</u> <u>Dale v. Kelley</u>, 908 F. Supp. 125, n. 1 (W.D. N.Y. 1995), aff'd, 95 F.3d 2 (2d Cir. 1996). Because this Court has already addressed, in depth, the plaintiff's claims for false arrest and because the plaintiff presents no facts in support of a separate claim for false imprisonment, it finds no need to discuss separately the claim of false imprisonment.

G.   <u>State Law Negligence Claim</u>

The plaintiff's seventh cause of action is a state law negligence claim against the defendants.  According to the plaintiff, the defendants were grossly negligent in their purposeful and intentional violation of their duty of care towards the plaintiff under the laws of the State of New York.  (Compl. ¶ 73.)  Neither the plaintiff nor the defendants further address this claim in the pleadings on the motion for summary judgment.

---

further details.  (Defs.' Mem. in Support of Summ. J. at n.4.)

This Court first notes that it may exercise supplemental jurisdiction over the plaintiff's state law negligence claim, as it arises from the same nucleus of operative facts as the § 1983 causes of action.  <u>See</u> <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 349 (1988) (citing <u>Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966)).  A negligence claim will survive summary judgment when a plaintiff alleges facts that establish that the defendant had a duty to protect the plaintiff, the defendant breached that duty, and that breach caused the plaintiff to be injured.  <u>See</u> <u>Lombard v. Booz-Allen & Hamilton, Inc.</u>, 280 F.3d 209, 215 (2d Cir. 2002).

In this case, this Court finds that the plaintiff has failed to allege any facts in support of his negligence claim.  The complaint states that the defendants' concerted actions were recklessly indifferent and shocking to the conscience, but provides no further details.  (Compl. ¶ 73.)  As previously mentioned, this claim is not addressed in the pleadings on the motion for summary judgment.  For these reasons, summary judgment must be granted as to the plaintiff's state law negligence claim.

## V.  <u>Conclusion</u>

For the reasons stated above, the defendants' motion for summary judgment is GRANTED in PART and DENIED in PART.  Summary judgment is granted as to Officer Ebel, Officer Gasker, Officer D'Allesandro, Lieutenant Campbell, Lieutenant Hayes, Sergeant Hood, and Chief Warren.  Summary judgment is denied as to Officer Quinoy.

Accordingly, only the Village of Sleepy Hollow, Officer Quinoy, and police officers John Does 1-4 remain defendants in this case.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     July 5, 2011


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE
Sitting by Designation